NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000380
08-MAY-2020
08:05 AM**

NO. CAAP-16-0000380

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

AKIRA KADOMATSU, JUNKO KADOMATSU, Individually, and as Next
Friend for AK, GK, and MK, minors, Plaintiffs-Appellants,
v.
COUNTY OF KAUAʻI and STATE OF HAWAIʻI, Defendants-Appellees,
and
HYATT CORPORATION, dba GRAND HYATT KAUAI RESORT AND SPA, KAWAILOA
DEVELOPMENT LLP, and MAHAULEPU FARM LLC, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 13-1-0324)

MEMORANDUM OPINION
(By:  Ginoza, Chief Judge, Leonard and Hiraoka, JJ.)

Plaintiffs-Appellants Akira Kadomatsu (**Kadomatsu**) and
Junko Kadomatsu, individually and as next friends for minors AK,
GK, and MK (collectively, the **Plaintiffs**) appeal from the
**Judgment** in favor of Defendants-Appellees **State** of Hawaiʻi and
**County** of Kauaʻi entered by the Circuit Court of the Fifth
Circuit[1] on April 29, 2016.  For the reasons explained below, we
affirm the Judgment.

### PROCEDURAL HISTORY

Plaintiffs' complaint was filed on November 14, 2013.
The complaint alleged that Kadomatsu was injured on November 15,
2011, by the negligence of the State and the County (among

---

[1]     The Honorable Kathleen N.A. Watanabe presided.

others)[2] because of "an unreasonably dangerous condition of the adjacent subsea terrain and [sic] creating an unreasonable risk of harm" at the beach where Kadomatsu was swimming. Kadomatsu's interrogatory answers stated that he "went to the beach in front of [the Grand] Hyatt [Kaua'i Resort and Spa]. We [sic] went into the ocean and began swimming. Just before the incident, I was swimming in the ocean. . . . I was pushed down to the bottom of the ocean by a wave and hit my forehead on a rock, coral or something hard." Kadomatsu became quadriplegic as a result.

On March 11, 2015, the State filed a motion for summary judgment. The motion was supported by a declaration from Stephen L. Thompson **(Thompson)**, the State Parks Program Manager of the State's Department of Land and Natural Resources **(DLNR)**. Thompson stated that "[t]he State does not own or operate any public beach parks adjacent to the Grand Hyatt Resort and Spa[.]" By order entered on July 27, 2015, the circuit court granted the State's motion. The circuit court did not enter a certified judgment on this order pursuant to Rule 54(b) of the Hawai'i Rules of Civil Procedure **(HRCP)**.[3]

On March 27, 2015, the County filed a motion for summary judgment. The motion was supported by four declarations authenticating various documents and photographs. It argued that the County owed no legal duty to Kadomatsu because he entered the ocean from the Grand Hyatt Resort's beach access, not from the

---

[2]    Plaintiffs settled their claims against Defendants Hyatt Corporation and Kawailoa Development LLP.

[3]    HRCP Rule 54 provides, in relevant part:

> **(b) Judgment upon multiple claims or involving multiple parties.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties · shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

County-owned Shipwreck Beach Park. It also argued that even if Kadomatsu had entered the ocean from Shipwreck Beach Park, any legal duty the County owed to Kadomatsu was fulfilled by the County's compliance with Hawaii Revised Statutes (**HRS**) § 663-1.56. By order entered on July 16, 2015, the circuit court denied the County's motion.

On September 11, 2015, Plaintiffs filed an amended complaint.[4] The amended complaint re-alleged negligence claims against the State and the County, identified the ocean off the County's Shipwreck Beach Park as the location of Kadomatsu's accident, and specified that the "extremely dangerous natural condition" was sandstone. Attached to the amended complaint were photographs of warning signs posted by the County at the makai end of the Shipwreck Beach Park parking lot, facing the parking lot. One of the warning signs read:

**DANGEROUS**
**SHOREBREAK**
Waves break in shallow water
Serious injuries could occur, even in small surf
**IF IN DOUBT, DON'T GO OUT**

The other sign warned of a strong current, and that "you could be swept away from shore and could drown."

The amended complaint also alleged that the State and the County deprived Kadomatsu of his rights without due process and in violation of the equal protection clause of the constitutions of the state of Hawai'i and the United States.

On October 8, 2015, the State moved to dismiss the amended complaint. The motion was granted by order entered on December 15, 2015.

On October 7, 2015, the County moved to dismiss the amended complaint. The motion was granted by order entered on December 15, 2015. Plaintiffs moved for reconsideration. The circuit court denied reconsideration on February 17, 2016.

---

[4] An order granting Plaintiffs' motion to amend the complaint was entered on September 9, 2015.

The Judgment was entered on April 29, 2016. This appeal followed.[5]

## DISCUSSION

### I. The Circuit Court Did Not Err By Dismissing the Amended Complaint Against the State

"A circuit court's ruling on a motion to dismiss is reviewed de novo." Bank of Am., N.A. v. Reyes-Toledo, 143 Hawai'i 249, 256, 428 P.3d 761, 768 (2018) (citations omitted). A reviewing court applies the same standard applied by the trial court:

> [A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [their] claim that would entitle [them] to relief. The appellate court must therefore view a plaintiff's complaint in a light most favorable to [them] in order to determine whether the allegations contained therein could warrant relief under any alternative theory. For this reason, in reviewing a circuit court's order dismissing a complaint . . . the appellate court's consideration is strictly limited to the allegations of the complaint, and the appellate court must deem those allegations to be true.

Id. at 257, 428 P.3d at 769 (citation omitted). "However, in weighing the allegations of the complaint as against a motion to dismiss, the court is not required to accept conclusory allegations on the legal effect of the events alleged." Kealoha v. Machado, 131 Hawai'i 62, 74, 315 P.3d 213, 225 (2013) (citations omitted).

### A. The negligence claim.

The elements of a negligence claim are:

(1) A duty or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks;

(2) [a] failure on the defendant's part to conform to the standard required: a breach of the duty;

---

[5] Because we affirm the Judgment, we need not address Plaintiffs' additional contentions that the circuit court erred in granting the State's March 11, 2015 motion for summary judgment on the original complaint, in denying Plaintiffs' discovery motions, and in denying Plaintiffs' motion for reconsideration of the order granting the County's motion to dismiss the amended complaint.

(3)     [a] reasonably close causal connection between the conduct and the resulting injury; and

(4)     [a]ctual loss or damage resulting to the interests of another.

Bhakta v. Cty. of Maui, 109 Hawai'i 198, 211, 124 P.3d 943, 956 (2005) (emphasis and alterations in original) (citations omitted).  The existence of a legal duty is entirely a question of law.  Bidar v. Amfac, Inc., 66 Haw. 547, 552, 669 P.2d 154, 158 (1983).  HRS § 663-1.56 (Supp. 2010), provides:

> **Conclusive presumptions relating to duty of public enities to warn of dangers at public beach parks.**  (a) The State or county *operating a public beach park* shall have a duty to warn the public specifically of dangerous shorebreak or strong current in the ocean adjacent to a public beach park if these conditions are extremely dangerous, typical for the specific beach, and if they pose a risk of serious injury or death.
>
> (b)    A sign or signs warning of dangerous shorebreak or strong current shall be *conclusively presumed to be legally adequate* to warn of these dangerous conditions, if the State or county posts a sign or signs warning of the dangerous shorebreak or strong current and the design and placement of the warning sign or signs has been approved by the chairperson of the board of land and natural resources. The chairperson shall consult the governor's task force on beach and water safety prior to approving the design and placement of the warning sign or signs.
>
> (c)    A sign or signs warning of other extremely dangerous natural conditions in the ocean adjacent to a public beach park shall be conclusively presumed to be legally adequate to warn of the dangerous natural conditions, if the State or county posts a sign or signs warning of the extremely dangerous natural condition and the design and placement of the sign or signs have been approved by the chairperson of the board of land and natural resources.  The chairperson shall consult the task force on beach and water safety prior to issuing an approval of the design and placement of a warning sign or signs pursuant to this section.
>
> (d)    The State or county operating a public beach park may submit a comprehensive plan for warning of dangerous natural conditions in the ocean adjacent to a public beach park to the chairperson of the board of land and natural resources who shall review the plan for adequacy of the warning as well as the design and placement of the warning signs, devices, or systems.  The chairperson shall consult with the task force on beach and water safety prior to issuing an approval of the plan.  The task force on beach and water safety may seek public comment on the plan.  In the event that the chairperson approves the plan for the particular beach park after consulting with the task force and the State or county posts the warnings provided for in the approved plan, then the warning signs, devices, or systems shall be *conclusively presumed to be legally adequate* to warn for all dangerous natural conditions in the ocean adjacent to the public beach park.

(e)     Neither the State nor a county shall have a duty to warn on beach accesses, coastal accesses, or *in areas that are not public beach parks* of dangerous natural conditions in the ocean.

(f)     Neither the State nor any county shall have a duty to warn of *dangerous natural conditions* in the ocean *other than as provided in this section*.

(g)     In the event that a warning sign, device, or system posted or established in accordance with this section is vandalized, otherwise removed, or made illegible, the conclusive presumption provided by this section shall continue for a period of five days from the date that the vandalism, removal, or illegibility is discovered by the State or county.  The State or county operating a public beach park shall maintain a record regarding each report of vandalism, removal, or illegibility that results in the replacement of a warning sign, device, or system at a State or county public beach park.  The record shall include the date and time of the reporting and the replacement of the warning sign, device, or system.  The State and county shall provide a copy of the record annually to the chairperson of the board of land and natural resources and the task force on beach and water safety.

(h)     The chairperson shall consider the needs of the public to be warned of potentially dangerous conditions in the ocean adjacent to a public beach park prior to issuing an approval for the design and placement of a warning sign or a comprehensive plan.  The chairperson may require warning devices or systems in addition to the signing before approving the design and placement of a warning sign or a comprehensive plan.  *The approval of the design and placement of a warning sign, device, system or comprehensive plan provided in this section shall be a discretionary decision under chapter 662.*

(i)     Chapter 91 shall not apply to any process, including any action taken by the chairperson, established or made pursuant to this section.

(j)     Nothing in this section shall be construed to have an impact upon governmental liability for the performance of rescue services or duties and responsibilities of lifeguards other than the duty to warn as set forth in this section.

(Bold italics added.)

Plaintiffs' amended complaint did not allege that the State operated Shipwreck Beach Park, where Kadomatsu was injured. The amended complaint alleged that Kadomatsu was injured in the ocean fronting the County-owned Shipwreck Beach Park.  Thus, under HRS § 663-1.56, the State had no duty to warn Kadomatsu of dangerous natural conditions at that beach park.  Bhatka, 109 Hawai'i at 212-13, 124 P.3d at 957-58 (applying HRS § 663-1.56 and holding that the State has a duty to warn of extremely dangerous conditions only at State beach parks).

6

In addition, because the State has not waived its sovereign immunity for the discretionary act of approving the design and placement of the County's warning sign, Plaintiffs' claim that the State negligently approved the sign fails to state a claim upon which relief can be granted.   HRS § 662-15 (Supp. 2010) provides, in relevant part:

> This chapter [the State Tort Liability Act] shall not apply to:
>
> (1)   Any claim based upon an act or omission of an employee of the State . . . based upon the exercise or per-formance or the failure to exercise or perform a **_discretionary function or duty_** on the part of a state officer or employee, whether or not the discretion involved has been abused[.]

(Bold italics added.)   Under the facts pleaded in the amended complaint, as a matter of law the State could not be liable in tort to the Plaintiffs.   The circuit court did not err in dismissing the amended complaint's negligence claim against the State.

### B.   The constitutional claims.

Plaintiffs' amended complaint alleged that the State deprived Kadomatsu of his constitutional rights to due process and equal protection under the law.   The sole remedy sought was recovery of damages.   The State Tort Liability Act, HRS § 662-2 (1993), does not allow the State to be held liable for money damages for constitutional violations.   Figueroa v. State, 61 Haw. 369, 383, 604 P.2d 1198, 1206 (1979).   The circuit court did not err in granting the State's motion to dismiss the Plaintiffs' claim against the State for alleged constitutional violations.

### II.   The Circuit Court Did Not Err By Dismissing the Amended Complaint Against the County

The County's motion to dismiss the amended complaint was filed pursuant to HRCP Rule 12(b)(6), for failure to state a claim upon which relief could be granted.   Plaintiffs' memorandum in opposition included matters outside the amended complaint that were not excluded by the circuit court.   Under such circumstances HRCP Rule 12(b) provides, in relevant part:

> If, on a motion asserting the defense numbered (6) to
> dismiss for failure of the pleading to state a claim upon
> which relief can be granted, matters outside the pleading
> are presented to and not excluded by the court, *the motion
> shall be treated as one for summary judgment and disposed of
> as provided in Rule 56,* and all parties shall be given
> reasonable opportunity to present all material made
> pertinent to such a motion by Rule 56.

(Bold italics added.) We review the circuit court's grant of summary judgment de novo using the same standard applied by the circuit court. Lansdell v. Cty. of Kauai, 110 Hawai'i 189, 194, 130 P.3d 1054, 1059 (2006). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Id. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. Id. In addition, "[a]n appellate court may affirm a judgment of the lower court on any ground in the record which supports affirmance." Am. Sav. Bank, F.S.B. v. Chan, 146 Hawai'i 94, 103, 456 P.3d 167, 176 (2020) (citing Strouss v. Simmons, 66 Haw. 32, 40, 657 P.2d 1004, 1010 (1982)).

## A. The negligence claim.

Plaintiffs contend that the shorebreak warning sign should have been double-sided, and placed at locations in addition to the one makai of the County's parking lot at Shipwreck Beach Park, facing mauka. Plaintiffs did not allege whether the signage at Shipwreck Beach Park was approved by the State under HRS § 663-1.56. However, the County's March 27, 2015 motion for summary judgment contained a declaration from Curt Cottrell, then the assistant administrator for DLNR's State Parks Division, authenticating various documents including (1) a letter dated December 19, 1996, from the State Task Force on Beach and Water Safety to then-Board of Land and Natural Resources Chair Michael D. Wilson (**Wilson**) recommending approval of the design of the dangerous shorebreak warning sign submitted by the County, with then-Chair Wilson's signed approval, (2) a letter dated

September 29, 1997, from the State Task Force on Beach and Water Safety to then-Chair Wilson, recommending approval of the placement of the dangerous shorebreak warning sign at Shipwreck Beach Park and other locations, with then-Chair Wilson's approval, and (3) a memorandum from the County to DLNR confirming that the approved shorebreak warning sign, among others, was installed at Shipwreck Beach Park on January 11, 1998. Under HRS § 663-1.56(b), then-Chair Wilson's approval of the County's design and placement of the dangerous shorebreak warning sign at Shipwreck Beach Park, upon the recommendation of the State Task Force on Beach and Water Safety, is conclusive of the legal adequacy of the warning.

Plaintiffs also argue that the County negligently failed to warn of the dangerous sandstone condition. However, Kadomatsu's interrogatory answers stated: "I was pushed down to the bottom of the ocean by a wave and hit my forehead on a rock, coral or something hard." It was the shorebreak that caused Kadomatsu's injury, whether he hit his forehead on a rock, coral, sandstone, the sandy bottom, or something else under the water. In addition, Plaintiffs' amended complaint alleged that sandstone was an "extremely dangerous <u>natural</u> condition[.]" (Underscoring added.) The County had no duty to warn Kadomatsu about dangerous natural conditions, except as provided in HRS § 663-1.56. The legislative history of HRS § 663-1.56 was quoted by the Hawai'i Supreme Court in <u>Lansdell</u>:

> [T]he legislature specifically eliminated the State's and various counties' duty to warn on "beach accesses, coastal accesses, or in areas that are not in public beach parks of dangerous natural conditions" <u>and with regard to "dangerous natural conditions in the ocean"</u> other than as provided by [1996 Haw. Sess. L. Act 190]. The legislative history of Act 190 also evinces this intention.
>
>> This bill would establish the duty of the State and counties to warn of *dangerous shorebreaks or strong ocean current if the conditions are extremely dangerous, typical for the beach, and if they pose a risk of serious injury or death. . . . The bill does not require warning to be given of other extremely dangerous conditions, but permits the State and counties to obtain the same legal presumption for those conditions if the State or county responsible for the beach posts approved warning signs.*

<u>Id.</u> at 201, 130 P.3d at 1066 (quoting Sen. Conf. Comm. Rep.

No. 98, in 1996 Senate Journal, at 787) (italics in original, underscoring added).

As originally enacted, HRS § 663-1.56 was to be automatically repealed on June 30, 2007. After Lansdell was decided, Act 152 of the 2007 Legislature repealed the sunset provision, making the statute permanent. S.B. No. 1603 (2007) stated:

> The legislature finds that the limitations on state and county liability have proven to be beneficial to the state and county governments, as well as the public. The liability protections have reduced the exposure of the state and county governments to substantial damages and, as a result, have allowed the state and county governments to keep recreational areas and public beach parks with potentially dangerous conditions open to the public. The legislature further finds that state and county compliance with the statutorily required public warning of dangerous conditions at recreational areas and public beach parks has contributed to an improvement in public safety in these areas, which justifies making the current liability exemptions for state and county governments relating to recreational areas and public beach parks and actions of county lifeguards permanent or extending their protections.

S.B. 1603, S.D. 2, H.D. 2, C.D. 1, 24th Leg., Reg. Sess. (2007). The circuit court did not err in dismissing the amended complaint's negligence claim against the County.

### B.    The constitutional claims.

Plaintiffs' amended complaint alleged that the County deprived Kadomatsu of his rights "without due process in violation of the Constitution of the State of Hawaii, Article 1, Secs. 1, 2 and 1.13, and/or the United States Constitution, Articles (amendments) VII and XIV, Section 1." They cite Brodie v. Haw. Auto. Retail Gasoline Dealers Ass'n, 2 Haw. App. 316, 631 P.2d 600 (1981), rev'd, 65 Haw. 598, 655 P.2d 863 (1982), for the proposition that "one of the things that distinguishes our society is the citizen's relative freedom of access to the courts." Id. at 321, 631 P.2d at 604. The only authority they cite to support their argument that HRS § 663-1.56 unconstitutionally deprives them of their right of access to the courts is Silva v. City & Cty. of Honolulu, 115 Hawai'i 1, 165 P.3d 247 (2007). In that case the supreme court held that former HRS § 46-72 (Supp. 1998) (which required that persons making claims against a county for personal injury or property damage

must provide the county with written notice of the claim within six months after the injury) violated the equal protection clause of the Hawai'i Constitution by creating a class of tort claimants — those injured by the conduct of a county — who were subject to disparate treatment when compared to tort claimants injured by the conduct of the State (whose claims were subject to a two-year statute of limitation under HRS § 662-4 (1993)). Silva does not stand for the proposition that a statute limiting a governmental entity's duty to warn unconstitutionally deprives one who did not receive the warning of access to the courts.

Plaintiffs' amended complaint also alleged that the County deprived them of equal protection "in violation of the guaranty of equal protection set forth in the Constitution of the State of Hawaii, Article 1, Sec. 1.5 and/or the Constitution of the United States, Article (amendment) XIV, Sec. 2," but they do not cite to Silva, which was actually an equal protection case, in their argument. Under Silva, HRS § 663-1.56 survives constitutional scrutiny because it treats all tort claimants equally. The circuit court did not err in dismissing the amended complaint's claim against the County for constitutional violations.

**CONCLUSION**

For the foregoing reasons, the Judgment entered by the circuit court on April 29, 2016, is affirmed.

DATED: Honolulu, Hawai'i, May 8, 2020.

On the briefs:

James Krueger,
Cynthia K. Wong,
for Plaintiffs-Appellants.

Caron M. Inagaki,
Marie Manuele Gavigan,
for Defendant-Appellee
State of Hawai'i.

Adam P. Roversi,
for Defendant-Appellee
County of Kaua'i.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge